United States District Court
Southern District of Texas
**ENTERED**
August 18, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| HOKAR "COOPER" AQRAWI, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 4:20-CV-3161 |
| § | |
| AMERICAN MODERN PROPERTY AND § | |
| CASUALTY COMPANY, § | |
| § | |
| Defendant. § | |

## ORDER

Pending before the Court are the Plaintiff Hokar Aqrawi's (the "Plaintiff" or "Aqrawi") Motion to Dismiss the Defendant American Modern Property and Casualty Company's (the "Defendant" or "American Modern") Counterclaims (Doc. No. 11) and the Defendant's Motion for Summary Judgment (Doc. No. 12). The Defendant filed a response to the Plaintiff's motion (Doc. No. 13). The Plaintiff filed a response to the Defendant's motion (Doc. No. 14) to which the Plaintiff replied (Doc. No. 15). After considering the motions, briefing, evidence, and applicable law, the Court hereby grants both motions.

### I. Background

In February of 2019, Aqrawi purchased a 2019 Lamborghini Urus (the "Vehicle") and purchased insurance for it from American Modern. The insurance policy is a "Collector Vehicle Policy" and contemplates that the Vehicle would only be used for "occasional pleasure use." (*See* Doc. No. 12-4 at 4, 8). Aqrawi titled the Vehicle to an LLC called DNC Motors registered in Montana, of which he is a member. Aqrawi then transferred possession of the Vehicle and its title to his "shop" Icon Exotics, a combination garage and dealership owned by Aqrawi and a partner. (*See* Doc. No. 12-3; 12-5 at 10, 15). Icon Exotics put the Vehicle up for sale. (Doc. No. 12-5 at 6).

In June of 2019, a potential buyer, McLevy St. Eloi ("St. Eloi"), was interested in purchasing the Vehicle and was allowed to test drive it. The next day, while St. Eloi was still driving the Vehicle, it ran out of gas on the highway. Another vehicle collided with the rear-end of the Vehicle, causing it to crash into a retaining wall and sustain damage. St. Eloi was cited for impeding traffic and failure to maintain financial responsibility and the other driver was cited for driving without a driver's license. (*See* Doc. No. 12-2 at 3). An estimate provided by the Plaintiff puts the cost to repair the Vehicle is $134,225.70. (*See* Doc. No. 1-2 at 64).

Aqrawi made a demand on American Modern for it to pay the cost to repair the Vehicle. American Modern denied the claim. Aqrawi filed suit against American Modern in Texas state court claiming breach of contract, violations of the Texas Insurance Code, the Texas Deceptive Trade Practices Act (DTPA), breach of the duty of good faith and fair dealing, and asking for a declaratory judgment. American Modern removed to this Court based on diversity of citizenship and counterclaimed against Aqrawi for declaratory judgment. Aqrawi filed a motion to dismiss the counterclaim and American Modern has moved for summary judgment on Aqrawi's claims.

## II. Motion to Dismiss Counterclaim

First, Aqrawi has moved to dismiss American Modern's declaratory judgment counterclaim pursuant to Rule 12(b)(6).

### A. Legal Standard

A defendant (or counter-defendant) may file a motion to dismiss a complaint for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

2

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The court is not bound to accept factual assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

**B.     Analysis**

American Modern has counterclaimed against Aqrawi pursuant to the Declaratory Judgment Act. It asks for various declarations that amount to a finding by the Court that American Modern did not breach its insurance agreement with Aqrawi when it denied coverage. (*See* Doc. No. 4 at 11). Aqrawi has asked that the Court dismiss this request for declaratory relief as redundant of his affirmative causes of action.

"If a request for a declaratory judgment adds nothing to an existing lawsuit, it need not be permitted." *Burlington Ins. Co. v. Ranger Specialized Glass, Inc.*, 4:12-CV-1759, 2012 WL 6569774, at *2 (S.D. Tex. Dec. 17, 2012). "Courts in the Fifth Circuit have regularly rejected declaratory judgment claims that seek resolution of matters that will already be resolved as part of

3

the claims in the lawsuit." *Id.* To determine whether such rejection is appropriate, courts must "determine whether what a counterclaim requests is the opposite of the affirmative causes of action pleaded." *Centex Homes v. Lexington Ins. Co.*, 3:13-CV-719-BN, 2014 WL 1225501, at *14 (N.D. Tex. Mar. 25, 2014).

Here, Aqrawi has accused American Modern of breaching the insurance agreement by refusing to pay the claim. American Modern has asked for a declaration that it did not breach the agreement when it refused to pay the claim. American Modern's declaration request "seek[s] resolution of matters that will already be resolved as part of the claims in the lawsuit." *Burlington*, 4:12-CV-1759, 2012 WL 6569774, at *2. Accordingly, it is appropriate to dismiss it. Aqrawi's motion to dismiss is granted. The counterclaim for declaratory judgment is dismissed without prejudice.

## III. Motion for Summary Judgment

American Modern has moved for summary judgment on all of Aqrawi's claims against it, arguing that the damage to the Vehicle was not covered by the insurance agreement, so American Modern was not obligated to pay. Further, American Modern argues that, because the policy did not provide the relevant coverage, all of Aqrawi's additional claims fail as well.

### A. Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant

to show that the Court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248.

**B.    Analysis**

    **1.    Breach of Contract**

The relevant general portion of the coverage provided by American Modern to Aqrawi provides:

PART D –<br>COVERAGE FOR DAMAGE TO YOUR AUTO

INSURING AGREEMENT

A.    We will pay for sudden, direct and accidental loss to **your covered auto**, including equipment, minus any applicable deductible shown on the Declarations. If loss to more than one of **your covered autos** results from the same **collision**, only the highest applicable deductible will apply. We will pay for loss to **your covered auto** caused by:

    1.    **Comprehensive** only if the Declarations indicate that Comprehensive Coverage is provided for that auto.

    2.    **Collision** only if the Declarations indicate that Collision Coverage is provided for that auto.[1]

(Doc. No. 12-4 at 19). American Modern makes two main arguments that there was no coverage

---

[1] The Declarations page indicates that both Comprehensive Coverage and Collision Coverage was provided for the Vehicle. (*See* Doc. No. 12-4 at 4).

5

for Aqrawi's claim. First, it argues that Aqrawi's intent when he bought the Vehicle removed the Vehicle from the definition of "your covered auto" such that there was no coverage for the vehicle at all. Next, it argues that, even if the Vehicle does fall within the definition of "your covered auto," a policy exclusion removes this particular loss from the coverage.[2] Each argument will be addressed in turn.

      a.    "Your Covered Auto"

The policy provides the definition of "your covered auto":

U.    **Your covered auto** means:

    1.    Any vehicle shown on the Declarations which is a **Collector Vehicle** and is used solely for **occasional pleasure use**.

    2.    Any **newly acquired auto**.[3]

(*Id.* at 13). The Vehicle is shown on the Declarations (*see id.* at 4) and there seems no dispute that the Vehicle is a Collector Vehicle under the terms of the policy. American Modern's argument is that Aqrawi never intended to only use the Vehicle for "occasional pleasure use," so it does not fall within the definition of "your covered auto." "Occasional Pleasure Use" is defined in the policy:

O.    **Occasional Pleasure Use** means the vehicle is:

    1.    Used for activities consistent with and related to participation in vehicle exhibitions, vehicle club activities, parades, leisure/pleasure drives, or **maintenance**;

---

[2] American Modern makes another argument—that a different exclusion providing that there is no coverage for "road testing" should insulate it from liability. (*See* Doc. No 12-4 at 13). This exclusion is within the part of the policy pertaining to *Liability Coverage*, rather than Damage Coverage. (*See id.*) ("We will pay for damages for **bodily injury** or **property damage** for which any **insured** becomes legally responsible because of an auto accident."). Aqrawi has not alleged that he has become legally responsible for any bodily injury or property damage to a third party. He has only alleged that American Modern should pay for the damage to the Vehicle. Accordingly, this portion of the policy, and any exclusions from it, are inapplicable here. This includes Aqrawi's argument that, because St. Eloi was driving the car with Aqrawi's express permission, he was considered an "insured" because that definition is only provided in the Liability Coverage part of the policy. (*See id.*).

[3] The parties do not dispute that the Vehicle is not a "newly acquired auto" under the terms of the agreement.

6

> a. The following uses are not considered leisure/pleasure drives:
>
> * * *
>
> (5) For **business**[4] or commercial use.
>
> * * * *

(*Id.* at 12).

According to American Modern, the summary judgment evidence shows that Aqrawi bought the Vehicle in order to resell it, meaning that the Vehicle was never intended for "occasional pleasure use" and therefore cannot be considered "your covered auto" under the policy. American Modern points to the fact that Aqrawi titled the Vehicle to his LLC and gave possession of it to his dealership as evidence that he always intended the Vehicle to be used for business purposes. American Modern also points to various portions of Aqrawi's deposition testimony as evidence of this intention. For example, Aqrawi testified:

> A. Some guy comes in – you know – *you know I'm selling these cars too*, right? So, they're collectors, even though they buy and sell these cars, so . . . *I was trying to sell it to a guy that came in and said to [sic] wanted to buy the [Vehicle]*.

(Doc. No. 12-5 at 8) (emphases added). Later, the following exchange took place:

> Q. Okay. So, like did you ever have any intention of selling [the Vehicle] when the LLC purchased it?
> A. *That's what I usually do. I get these cars and buy them, and sell them back out.*
> Q. Okay. And again, my questions might sound like I don't know what I'm asking. I really don't, because, I, you know, I don't know how, like some of these things operate. And so you and your partner purchased this through the LLC; correct?
> A. Mm-hmm.
> Q. Yes?
> A. Yes.
> Q. And then, you know, the – you were going to use it for pleasure, or he was going to use it for pleasure use; correct? Or for sale?
> A. Money.

(Doc. No. 12-5 at 15–16) (emphasis added). In response, to American Modern's argument, Aqwari

---

[4] "**Business** includes trade, profession or occupation." (Doc. No. 12-4 at 11).

points to the fact that he testified during his deposition that titling the Vehicle though his LLC in Montana was only for tax purposes (*see* Doc. No. 12-5 at 12).

Aqrawi later submitted an affidavit, to which American Modern objects under the "sham affidavit rule," which provides that a "party may not manufacture a dispute of fact merely to defeat a motion for summary judgment." *Hacienda Records, L.P. v. Ramos*, 718 Fed. Appx. 223, 235 (5th Cir. 2018).[5] "[T]he sham-affidavit rule 'is applied sparingly' and may be invoked only where there is 'some inherent inconsistency between an affidavit and a deposition.'" *Guerrero v. Total Renal Care, Inc.*, 932 F. Supp. 2d 769, 776 (W.D. Tex. 2013) (quoting *Axxiom Mfg., Inc. v. McCoy Invs., Inc.*, 846 F. Supp. 2d 732, 749–50 (S.D. Tex. 2012)).

In Aqrawi's deposition, he testified under oath that he bought the Vehicle for the purpose of reselling it through his "shop," as seen in the quotations above. Aqwari's affidavit, executed after the motion for summary judgment was filed, states:

> I purchased the Vehicle to hold as part of my collection. I did not purchase this Vehicle for retail sale. I was interested in this particular car because it was rare and I thought that it would rapidly appreciate. This belief was based on the fact that Lamborghini had not produced a sports utility vehicle ("SUV") for almost fifty (50) years and there would be a high demand for this particular SUV.
>
> I previously gave a sworn statement that I purchased the Vehicle for "money." When I made this statement, I was referring to the appreciation in value that I expected the Vehicle to experience during my ownership of it. This aspect (future value) was a major driver behind my decision to acquire the Vehicle and the other cars in my car collection. This aspect (future value) is one of the distinguishing lines between an experienced car collector and a novice car collector. That is, experienced car collectors purchase cars for their future value or for "money." Further, at the time I purchased the Vehicle I did not intend to immediately resell it nor did I intend to offer it for retail sale. Rather I purchased it as part of my hobby (car collecting) and I intended to hold it in my collection and use it occasionally for my personal pleasure. In addition, I intended to allow it to appreciate during the period of my ownership.

---

[5] Aqrawi also provided a declaration by Austin Ables, Aqrawi's insurance agent with American Modern. (*See* Doc. No. 14-6). American Modern has objected to it as well. The Court need not rule on this objection because, as will be explained below, Aqrawi has failed to demonstrate a genuine dispute of material fact even if the Court were to consider the Ables Declaration.

8

(Doc. No. 14-1 at 1–2). This portion of the affidavit reveals an "inherent inconsistency" between Aqrawi's deposition testimony and the affidavit regarding Aqrawi's intent when he purchased the Vehicle. *Guerrero*, 932 F. Supp. 2d at 776. As such, the Court will disregard the affidavit in relation to Aqrawi's intent under the sham affidavit rule.

American Modern argues that Aqrawi's intent to resell the Vehicle when he purchased it takes the Vehicle out of the definition of "your covered auto" within the terms of the policy. (*See* Doc. No. 12 at 18). Even assuming that there is no doubt that Aqrawi's intent was to resell the Vehicle, it is unclear that mere intent would control over the terms of the policy itself and would have such sweeping consequences. American Modern's interpretation of the policy would mean that Aqrawi's intent when he purchased the Vehicle vitiated any coverage for it, regardless of the actual circumstances leading to damage. The Court need not determine whether this is a correct interpretation of the policy, however, because American Modern is nonetheless entitled to summary judgment based on its second argument, as explained below.

### b. Coverage Exclusion

The policy excludes from its "Damage to Your Auto" coverage the following:

11. Loss or damage to **your covered auto** while it is being used for other than **occasional pleasure use**.

(Doc. No. 12-4 at 23). According to American Modern, even if the Vehicle falls within the definition of "your covered auto," the summary judgment evidence shows that the damage to it occurred while it was being used for something other than "occasional pleasure use," so American Modern is not obligated to pay. Aqrawi responds that St. Eloi, with Aqrawi's express permission, was taking the Vehicle for a "leisure drive," which is included in the policy's definition of "occasional pleasure use" so the damage does not fall into the exclusion.

The summary judgment evidence, namely Aqrawi's own deposition testimony, shows that

9

St. Eloi was driving the Vehicle for a "test drive" to determine whether he wanted to purchase it. For example, Aqrawi explained:

> [A] nice guy – thought he was – comes in, and you know, says he wants to buy [the Vehicle]. You know, he wants to drive it. So we get the driver license and his insurance, like, you know, everybody else does, you know, make a copy of it, give it back to him, he drives it, comes back says he's really – he's really interested in it, and wants to, you know, show his wife . . . So he takes off with the car, we told him he could take it for the day . . . .

(Doc. No. 12-5 at 8–9). In addition, the following exchange occurred:

> Q. Okay. Did you allow him to *test drive* [the Vehicle] by himself?
> A. Yes.

(*Id.* at 13) (emphasis added). Last, the following exchange took place:

> Q. And you got a bunch of collectors, and you were trying to sell [the Vehicle], and there was a guy online – and I'm assuming that was Mr. St. Eloi; correct?
> A. Yes.
> Q. He came in and wanted to purchase the vehicle; correct?
> A. Correct.
> Q. And then he wanted to drive it for the night, so you okayed it, and let him drive it for the night, and bring it back in the morning. Correct?
> A. Correct.

(*Id.* at 17–18). There can be no doubt that St. Eloi's "drive" of the Vehicle was a "test drive" to determine whether he wanted to purchase it. This does not constitute a "leisure/pleasure drive" under the definition of "occasional pleasure use" under the policy. (*See* Doc. No. 12-4 at 12). Accordingly, the damage to the Vehicle was sustained while the while it was "being used for other than occasional pleasure use," and the loss falls into the policy's exclusion. (*Id.* at 23). Therefore, American Modern did not breach the contract when it refused to pay for the loss and summary judgment as to Aqrawi's breach of contract claim is appropriate.

    2.    **Other Claims**

Aqrawi also pleaded claims against American Modern alleging violations of the Texas Insurance Code, the DTPA, breach of the duty of good faith and fair dealing, and asking for a

declaratory judgment.

First, the declaratory judgment claim fails for the same reason the breach of contract claim fails—the policy excluded from coverage the specific loss here. Therefore, summary judgment against Aqrawi's declaratory judgment claim is granted.

The rest of Aqrawi's claims fail as well. "When the issue of coverage is resolved in the insurer's favor, extra-contractual claims do not survive." *State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010). In addition, "[a]n insurer does not breach its duty [of good faith and fair dealing] by denying a questionable claim." *Vought Aircraft Indus., Inc. v. Falvey Cargo Underwriting, LTD.*, 729 F. Supp. 2d 814, 839 (N.D. Tex. 2010). Further, Aqrawi has not met his summary judgment burden to show a genuine dispute of fact as to any misrepresentation by American Modern, which is an element of his DTPA claim. *See In re Frazin*, 732 F.3d 313, 323 (5th Cir. 2013). Aqrawi's only argument as to why his various claims should survive is that there was coverage under the policy, which this Court has already ruled against. Accordingly, summary judgment is granted as to all of Aqrawi's claims.

### IV. Conclusion

For the foregoing reasons, the Plaintiff's motion to dismiss is hereby granted (Doc. No. 11) and the Defendant's motion for summary judgment is hereby granted (Doc. No. 12).

Signed at Houston, Texas, this 18th day of August, 2021.

Andrew S. Hanen
United States District Judge